Drake, Ch. J.,
delivered tbe opinion of the court:
There does not seem to be any legal foundation for tbe claim in this case.
*553 The claimant must rely upon the statement of Jay Cooke in his advertisements, that the Treasury notes for which he was authorized to receive subscriptions were “payable in gold.” Neither in law, under which he acted, nor in the instructions from the Secretary of the Treasury to him, was there any provision to that effect. It follows that the only seeming foundation for a claim against the Government must be in those advertisements. And yet it does not appear that the claimant’s testator either subscribed for the notes which he held, or purchased them in reliance upon the statement in the advertisements that the notes were payable in gold. Hence, even if Cooke was authorized to make such a statement, it does not appear that it induced the party to purchase the notes.
But were it otherwise, Cooke could not bind the Government by any such statement. He was, by the law under which he acted, a mere special agent, with clearly defined powers, and whoever dealt with him in the matter of subscribing for Treasury notes was bound to know the scope of his authority and to see that he did not exceed it.
Section 3 of the “ act to authorize a national loan, and for other purposes,” (12 Stat. L., p. 259,) prescribed the powers and duties of such agents as follows:
“ The Secretary of the Treasury shall cause books to be opened for subscrix>tions to the Treasury notes for fifty dollars and upward, at such places as he may designate in the United States, and under such rules and regulations as he may. prescribe, to be superintended by the assistant treasurers of the United States at their respective localities, and at other places by such depositaries, postmasters, and other jiersons as he may designate, notice thereof being given in at least two daily papers of this city, and in one or more public newspapers published in the several places where subscription-books may be opened; and subscriptions for such notes may be received from all persons who may desire to subscribe, any law to the contrary notwithstanding.”
When Cooke was appointed to receive subscriptions for Treasury notes, his authority was comprised in that section, and all who subscribed for those notes were bound to know that fact. It was a mere naked authority to open books for subscriptions, and to receive the subscriptions which might be offered; and the public notice which the law authorized him to give was *554 simply that the books were opened, and that subscriptions would be received. When, therefore, he embodied in the notice the statement that the notes would be payable in gold, he did it without the authority of law, and all men were bound to know that such was the case. There can, therefore, be no'possible ground for holding the Government to make good that statement.
But, aside from the question of the agent’s authority, there is the question whether the notes were, in fact or in law, payable in gold.
There is no pretense that they were so in fact — that is, by their terms. As appears by the form of them, they simply promised to pay dollars, not dollars in gold or silver.
But it is claimed that because, when they were issued, no other dollar than that of gold or silver was known to the laws of the United States, therefore these notes were, in law, to be paid when they matured, in the kind of dollars which were, at the dates of their issue, recognized by those laws as a legal-tender in the payment of debts. This is an attempt to resuscitate a question which we supposed to have gone to its final rest, under the decision of the Supreme Court in the Legal Tender Gases, (12 Wallace R., 457,) holding that the acts of Congress making notes of the United States a legal tender in the payment of debts were constitutional, and applied to debts contracted before, as well as those contracted after, their passage. That decision leaves nothing for the claimant’s case to rest upon, and her petition, therefore, must be dismissed.